CLARISSA C. ARMSTRONG AND KOA (k) *vs.* KAPOHAKU (w) AND PAU (w).

APPEAL FROM DECISION OF McCULLY, J.

JULY TERM, 1884.

JUDD, C. J.; McCULLY AND AUSTIN, JJ.

Defendants, without disclosing their title, allowed plaintiff to lend money on mortgage of certain land, to which the mortgagor had apparently a good title; subsequently defendants recovered the land in an action of ejectment against the mortgagor; the money obtained from plaintiff on the mortgage was used by the mortgagor in permanent improvements on the land.

Held, affirming the decision appealed from, that plaintiff could recover the amount of the loan and interest from defendants.

DECISION OF McCULLY J. APPEALED FROM.

WITHOUT giving a formal abstract of the bill and answer, a brief narrative of the facts and circumstances which are involved in this litigation, as they appear from the pleadings and the testimony taken during five days, will sufficiently explain the points for adjudication.

May 1, 1861, a Royal Patent or grant issued to one "Koa" for 110 acres of land purchased from the Government in the district of Kohala, Hawaii.

There are two men named Koa involved in all the history of this case, one of whom may be designated as Koa deceased, the other as Koa plaintiff. The defendants are Kapohaku, the widow, and Pau sister, of Koa deceased.

At the April term, 1882, of the Supreme Court these defendants, as the heirs of Koa deceased, in an action of ejectment recovered possession of the above-granted premises, together with $1,200 damages, as having been granted to Koa deceased.

The question there at issue was to determine which of the two men named Koa was the grantee in the Royal Patent. While it

was conceded in the present case that the judgment obtained in the ejectment suit must be taken to have established for a fact that the grantee was Koa deceased and not Koa plaintiff, evidence was introduced at large before me by both parties, showing the history of the purchase of the land, the occupation of it and the course of dealing during twenty years. At this point it should be said that the plaintiff, Mrs. C. C. Armstrong, brings her bill to recover $500 loaned to Koa plaintiff, secured by mortgage on these premises and expended in improvements made thereon.

The plaintiff Koa with other witnesses gave evidence with detail of many special circumstances, that he made the purchase of the land and received the patent, and always held and treated the land as his own. Per contra, the evidence is complete and positive that the man who purchased the land and received the grant was Koa deceased.

Taking, as we do, that the truth is that the patentee was Koa deceased, I must believe that the story by which that was supported is the true one.

The result of the testimony given on both sides of matters following the purchase of the land is as follows:

The full name of Koa deceased was Kahooholomokuokekoa, certainly a noticeable, peculiar and distinctive name. He was generally called and known by the brief name "Koa." Koa plaintiff was a "namesake" of Koa deceased, as to the short name. He never appears to have had the full name. This full name was not unknown to the friends of Koa deceased. He himself was particular, on one occasion given in testimony, to explain to a tax assessor that Koa was only his appellation for brevity, and that his proper name was as above. Koa plaintiff was a "namesake" of Koa deceased. He was considerably his junior. They lived in the same neighborhood in Kohala, but neither of them on the land in question. The connection or relationship may have been only a Hawaiian friendship. The land was *kula*, or pasture land, and in the year after the purchase was not fenced. I think it is shown that both of these men and their families and relatives or "ohana," in the early years of the purchase, occupied by cultivation such parts or pieces of this land as they needed. A tract of 110 acres would furnish ample area for the use in this manner of several families.

Sweet potato patches of from a quarter of an acre to an acre in extent might be placed here and there and from year to year, without conflict, by individuals of a circle of people who may have lived very much as a single family.

After several years of such loose occupation, the one and the other of the two Koas came to Honolulu, not in company of each other. Here they lived for several years, with visits to Kohala. The land probably was used by their families and friends as before. In 1878 we find both Koas in Kohala. Some time in that year Koa Sr. died. Planting on the land had ceased as it was not fenced, and there were now cattle and horses running at large in that neighborhood.

About this time Koa plaintiff built a house on this land and occupied it. He had possession of the original paper grant, and holds it to the present time. In 1873 he raised money by a mortgage on this land, likewise in 1877, both of record. The mortgage to Mrs. Armstrong was the third, made January 15, 1881. In 1880 he had an acre surveyed for sale. There is evidence that the survey and the proposed sale were brought to the notice of the defendants. In 1878 he made a lease of 100 acres of this land and afterward collected the rents at $400 per annum for four years. In 1881 he built another house and repaired the first, also put some fencing on the land. He becomes a plaintiff in this action to recover the amount expended other than the money of Mrs. Armstrong, in making these improvements, but after showing by his own testimony that this was much within the amount received by him for rent, the plaintiff's counsel withdraws the claim. The plaintiff Koa's testimony is that of the $500 received from Mrs. Armstrong he expended $446 in material for these houses and improvements, and the remainder went toward his own support while he was building them, he being a carpenter and expending his own labor.

The bill alleges that Koa, having been deprived of this property, is unable to pay the sum borrowed from Mrs. Armstrong, and charges that the conduct of the defendants constitutes a fraud on the said Mrs. Armstrong (the claim of Koa plaintiff now being abandoned), and prays that an account being taken of the amount of (Mrs. Armstrong's) money expended on the premises, and now

inuring to the benefit of the defendants, they may be required to pay the same to her with interest from date of the ejectment.

The position of affairs at the date of the Armstrong loan and mortgage was this : Koa plaintiff held the original grant and it was a grant to " Koa." He was in notorious possession of the land, having leased 100 acres of it three years before and having built and occupying a house on the remnant of ten acres. The evidence of defendants making a claim of right is very slight. It appears to me that when Koa plaintiff presented himself to the agent of Mrs. Armstrong for a loan, holding a royal grant to Koa, being in possession of the land, having leased the most of it, by a lease which was notorious in the locality, that there was nothing to advise such agent of the fact, as ascertained by the result of the ejectment suit subsequently, that the Koa intended in the grant was another man, and that Koa plaintiff was falsely personating a man of his own name. There had been no effectual assertion of defendants' rights, and on the other hand there was no negligence on the part of the plaintiff Armstrong. It could not have been surmised, under the circumstances, that the mortgagor was not the veritable grantee. There was nothing in any record to show that the title had ever been in any other person than the one who produced the title and was in possession.

Under that state of facts, does the rule in equity of constructive fraud apply, to charge the defendants with the money borrowed and expended on their land. The principle of equity is that if the true owner stands by and suffers improvements to be made on an estate, without notice of his title, he will not be permitted in equity to enrich himself by the loss of another, but the improvements will constitute a lien on the estate.

Story's Equity Jur., Sec. 1237. *Green vs. Biddle*, 8 Wheat, 77.

In order, however, to justify the application of this cogent moral principle, it is indispensable that the party so standing by and concealing his rights should be fully apprised of them and should by his conduct or gross negligence influence the purchase, for if his acts or silence or negligence do not mislead or in any manner affect the transaction, there can be no just inference of actual or constructive fraud on his part. Story's Eq. Jur., Sec. 386.

As to Koa plaintiff no claim could be made on the defendants,

for he must now be held to have been all the time cognizant of the title of Koa deceased and of his heirs, and that he was a fraudulent trespasser. As to the mortgage of Mrs. Armstrong, however, the case stands that in consequence of the conduct of the defendants, in not giving effectual notice that Koa plaintiff was in wrongful possession of their estate, she loaned money on this security, and it is shown that this money was invested in a house and improvements on this land, of which they have now the benefit. It seems clear to me that upon all equitable principles they take the estate as charged with the benefit.

It further appeared in the case that, upon an execution following the judgment in the ejectment case, the Sheriff, after placing the present defendants in possession of the land recovered, levied upon and sold the buildings and fence as personal property of Koa, to satisfy the judgment of $1,200 recovered against him, and that they were purchased by these defendants. Their counsel now claims that they cannot be held to another purchase of the same property. This must be held to have been attached to the real estate and forming a part of it, and as such subject only to such equities as the present. It was not leviable. By the terms of the writ of possession the Sheriff was enjoined to place the defendants in possession of the land together with the appurtenances. This he does, but then takes the appurtenances as the personal property of Koa. The sale must be treated as a nullity.

I think the plaintiff, Mrs. Armstrong, is entitled to recover the full sum of $500 with interest from the 6th of June, 1882, the date when defendants were placed in possession of the premises.

The costs are to be paid one-half by the defendants and one-half by Koa.

Honolulu, July 8, 1884.

### OPINION OF THE FULL COURT, BY AUSTIN, J.

Referring to and adopting the opinion of Mr. Justice McCully in the case below, we add that we feel no doubt of the equitable right to relief of the plaintiff, the mortgagee. The defendant for years, without legal attack or assertion of her rights, allowed the plaintiff Koa to remain in possession of the land, to lease the most of it, to build and occupy a house on the remainder, and to hold the original Royal Patent in his hands, which ran in the same

name as his. With these muniments of title in his possession, he approaches the plaintiff, Mrs. Armstrong, and obtains a loan on mortgage. That such a loan should be made seems natural, and the supineness of the defendant was the cause of the investment. The plaintiff stands like a *bona fide* purchaser. In equity she holds a title in form, which, however, is only a security for the amount loaned. But she is to be protected, doubtless, like a *bona fide* purchaser.

The principle laid down in Story's Equity Jurisprudence, Sec. 385, applies to her. "So, if a party having a title to an estate should stand by and allow an innocent purchaser to expend money upon the estate without giving him notice, he would not be permitted by a court of equity to assert that title against such purchaser; at least, not without fully indemnifying him for all his expenditures."

The mortgage money, as shown, was expended and used in building a house on the premises, which inured to the benefit of the defendant. True, the house was built by the plaintiff Koa, in fraud of the defendant, but the mortgagee was not informed of the fraud, and by the defendant's inaction and neglect she is estopped from asserting the fraud against the mortgagee.

Even though she did not know of the existence of the mortgage in suit, she must accept the legitimate consequences of her acts, which rendered such a mortgage in good faith possible, and which would be likely to, and did, result in the investment of the money borrowed in permanent improvements for her benefit, as shown.

For these reasons, and for those expressed in the opinion of our brother, Judge McCully, the decree entered is affirmed with costs.

*W. R. Castle*, for plaintiff.

*J. L. Kaulukou*, for defendants.

Honolulu, August 12, 1884.